UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY PITTS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:04CV735 RWS |
| | ) | |
| CITY OF OWENSVILLE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before me on Defendants' motion for summary judgment. Plaintiffs Jerry Pitts, Terrence Petering, James Wells, Terrance Flatt, and Gary Peanick are former police officers of the City of Owensville, Missouri. Plaintiffs bring this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010 - 213.095 ("MHRA"), and 42 U.S.C. § 1983. Plaintiffs claim that they were retaliated against because they "blew the whistle" on the City Marshall's illegal activities. Plaintiffs claim that the retaliation took the form of both a hostile work environment and the termination of all Plaintiffs except Wells. Plaintiffs argue that their "whistleblowing" is protected speech under the First Amendment of the United States Constitution because it occurred in their capacities of private citizens. Plaintiffs also claim that their rights under the Title VII were violated because they are members of a protected class, i.e., the class of "whistleblowers."

Defendants are the City of Owensville ("Owensville"), City Marshall Robert Rickerd, Mayor Mary Diestelkamp, Alderman Ray Deckman, Alderman Melvin Schulte, Alderman Gary Wenkel, and Alderman Samuel Bennett. Defendants have moved for summary judgment on the basis that there was a legitimate reason for the termination of Plaintiffs and because Plaintiffs had

no rights under federal law to continued employment as at-will employees.

The motion for summary judgment will be granted in part and denied in part. I will grant summary judgment in favor of Defendants on Plaintiffs' Title VII and MHRA claims because the class of "whistleblowers" is not a protected class under Title VII or the MHRA. I will deny Defendants' motion for summary judgment as to all other claims because there are many disputes of material fact, and Defendants are not entitled to judgment as a matter of law.

## I. BACKGROUND

In March 2002, Defendant Rickerd was campaigning to be elected as City Marshall for the City of Owensville. Rickerd was acting City Marshall at that time and had been since the previous City Marshall retired.

On March 2, 2002, Plaintiff Petering arrested an individual named Chris Epstein for suspected driving while intoxicated ("DWI"). Petering states that Epstein failed a field sobriety test and refused to supply a breath sample. Petering cited Epstein for DWI and seized his driver's license.

What occurred after Epstein's arrest is disputed. Plaintiffs claim that Rickerd ordered Petering to void Epstein's DWI and to issue minor traffic citations instead. Petering claims that he resented the order. However, Petering complied and voided Epstein's DWI charge. No alcohol influence report was sent to the Missouri Department of Revenue ("DOR") as is required under Missouri law whenever a driver refuses to supply a breath sample. Plaintiffs claim that Epstein's parents had been helping Rickerd in his campaign to get elected as City Marshall and that their help was the reason he ordered Petering to void the DWI. Plaintiffs claim that Rickerd later expressed displeasure with Petering for having arrested Epstein.

Rickerd claims that he never ordered Petering to void the ticket. Rickerd claims he only asked Petering to reduce the charges and that his motivation was to prevent Epstein from losing his commercial driver's license. Rickerd claims that Epstein's parents' help in his political campaign was minimal, in that Epstein's mother received some flyers from Rickerd and agreed to hand them out. Rickerd claims he does not know if she actually passed them out or not.

Rickerd was elected to the post of City Marshall in April 2002. During the first few months after the election, Rickerd rewrote the department policies and procedures. Plaintiffs were unhappy with the new policies.

Each Plaintiff was unhappy with Rickerd's management style. Plaintiffs did not like the fact that he often called them at home. Plaintiffs did not like the way Rickerd set their work schedules. Plaintiffs claim that Rickerd often yelled at them. Plaintiffs claim that Rickerd managed all of his employees poorly, not just Plaintiffs.

Plaintiffs claim that in May 2003, Mothers Against Drunk Driving ("MADD") began to investigate the Owensville Police Department as a result of the Epstein case. The investigation began sometime before any of the Plaintiffs was terminated. Plaintiffs claim two private citizens, not police officers, made the original call to MADD. Plaintiffs claim that Rickerd accused them of calling MADD and threatened to fire whoever it was that was responsible.

Rickerd claims that he had heard "through the gossip mill" that someone had called MADD but that he did not know who called. Rickerd claims that he never threatened any of his employees as a result of the events involving MADD.

In July 2003, Plaintiff Petering called the Missouri Attorney General's office to complain about Rickerd's handling of the Epstein case. On July 21, 2003, two Assistant Attorney Generals

appeared at the Owensville police station to investigate the complaint. Rickerd was not present because he was in K-9 training. The Assistant Attorney Generals discovered that Epstein's breath sample refusal form had not been forwarded to the DOR in compliance with Missouri law. The Attorney General's office forwarded its findings to the appropriate agencies and closed the case.

Rickerd terminated all of the Plaintiffs, except for Wells, in a short period of time after the investigations by MADD and the Attorney General's office began. Peanick was terminated on June 2, 2003. Petering was terminated on August 20, 2003. Pitts was terminated on November 5, 2003. Flatt was terminated on May 17, 2004. Wells resigned from the department on February 4, 2004, to work for another police department.

## II.     STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly

supported motion for summary judgment, the nonmoving party has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

## III. ANALYSIS

### A. *Plaintiffs' Claims Under Title VII and the MHRA Fail Because They are not Members of a Protected Class*

In order to state a claim under Title VII or the MHRA, Plaintiffs must be members of a protected class. 42 U.S.C. § 2000e-2(a); Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999) (Title VII and MHRA analysis identical). Plaintiffs claim that they are members of "the class of officers who blew the whistle on Rickerd."[1] Tile VII recognizes no such class. The protected classes recognized under Title VII are "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). As a result, Plaintiffs have failed to state a claim under Title VII or the MHRA, and I will grant summary judgment in favor of Defendants on Plaintiffs' claims arising under Title VII and the MHRA.

### B. *Plaintiffs' First Amendment Clause Claim Survives Summary Judgment Because They Reported Rickerd's Activities as Private Citizens*

Defendants claim that Plaintiffs cannot state a claim for retaliation under the First Amendment and 42 U.S.C. § 1983 because they are at-will employees. Defendants are mistaken.

The United States Court of Appeals for the Eighth Circuit "repeatedly has held that retaliation against the exercise of First Amendment rights is a basis for section 1983 liability." Pendleton v. St. Louis County, 178 F.3d 1007, 1011 (8th Cir. 1999). The Eighth Circuit has

---

[1] Plaintiffs' Opposition Brief, Docket No. 54, p. 12.

repeatedly extended this right to at-will employees. E.g., Helvey v. City of Maplewood, 154 F.3d 841, 844 (8th Cir. 1998). As a result, Plaintiffs had a well established right to be free from retaliation based on their protected speech activities.

A public employee's speech is protected when he or she is "speak[ing] as a citizen addressing matters of public concern." Garcetti v. Ceballos, 126 S. Ct. 1951, 1957 (2006). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." Id. at 1958.

In this case, the facts before me show that Defendants are not entitled to summary judgment. It is not clear from the record exactly who called MADD and when, but the evidence does show that Rickerd decided to terminate Peanick shortly after MADD began its investigation. Peanick claims that Rickerd had suspected him of calling MADD and had threatened him. Viewing the facts in the light most favorable to the Plaintiffs, an inference can be drawn that Rickerd suspected Peanick of calling MADD and terminated him in retaliation.

Petering, Pitts, and Flatt were terminated shortly after the Attorney General's office began investigating the Owensville Police Department. And Pitts's employment record, for example, gives rise to an inference of retaliation. There are no reprimands for Pitts prior to the Attorney General's investigation. Pitts received his first reprimand on July 26, 2003, just five days after the investigation began. Pitts received various reprimands until he was fired on October 27, 2003.

Although Wells was not terminated, he claims that Rickerd threatened him repeatedly and that he was constructively discharged. There is a sufficient dispute of fact regarding the conditions of Wells's employment such that summary judgment is improper.

The facts before me show that a reasonable jury could find that Plaintiffs' First Amendment rights were violated by Defendants. As a result, I will deny Defendants' motion for summary judgment as to Plaintiffs' First Amendment and § 1983 claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [#44] is **GRANTED in part and DENIED in part**. Summary judgment shall be **granted** in favor of Defendants and against Plaintiffs on Plaintiffs claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010 - 213.095. Summary judgment shall be **denied** on Plaintiffs' claims arising under the First Amendment and 42 U.S.C. § 1983.

Dated this 17th day of August, 2006.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE